UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>       *Plaintiff*,<br><br>  -against-<br><br>SPARK ENERGY, LLC,<br><br>       *Defendant*. | 1:19-cv-04478-PKC-LB |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE
TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S SHOW-
CAUSE DECLARATION AND PROPOSED AMENDED COMPLAINT**

                TODD C. BANK,
                 ATTORNEY AT LAW, P.C.
                119-40 Union Turnpike
                Fourth Floor
                Kew Gardens, New York 11415
                (718) 520-7125
                By Todd C. Bank

                *Counsel to Plaintiff*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

CONSTITUTIONAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATUTES AND RULES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   DEFENDANT FALSELY CLAIMS THAT PLAINTIFF ENGAGED IN
     CONTRADICTIONS; AND, DEFENDANT DOES SO IN ORDER TO
     PRETEND THAT THE PRESENT SCENARIO FITS INTO THE CASE
     LAW THAT HOLDS CONTRADICTIONS AS A FACTOR AGAINST
     GRANTING A MOTION FOR LEAVE TO AMEND A COMPLAINT . . . . . . . . . . . . . 1

     A.   Defendant Falsely Claims That Plaintiff
          Engaged in Contradictions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.   Defendant Pretends That the Present Scenario Fits into the
          Case Law That Holds Contradictions as a Factor Against
          the Granting of a Motion for Leave to Amend a Complaint . . . . . . . . . . . . . . . . 3

II.  DEFENDANT TRANSPARENTLY ATTEMPTS TO BIAS THIS COURT . . . . . . . . . 8

III. DEFENDANT DOES NOT EVEN PRETEND TO SHOW EVIDENCE
     OF THE MOTIVES THAT IT ASCRIBES TO PLAINTIFF . . . . . . . . . . . . . . . . . . . . . 10

IV.  THE PROPOSED AMENDED COMPLAINT STATES A CLAIM
     UNDER NEW YORK GENERAL BUSINESS LAW SECTION 399-p . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

Page

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. III .................................................................... 11

**STATUTES AND RULES**

15 U.S.C. §§ 1692-1692o ................................................................ 7

47 U.S.C. § 227 ........................................................................ 3

Fed. R. Civ. P. 9(b) .................................................................... 4

Fed. R. Civ. P. 11 ..................................................................... 4

Fed. R. Civ. P. 15(a)(2) ................................................................ 4

N.Y. GBL § 399-p ............................................................... 11, 12, 13

**CASES**

*Bank v. CreditGuard of America*,
    No. 18-cv-1311, 2019 WL 1316966
    (E.D.N.Y. Mar. 22, 2019), *recons. denied*,
    2019 WL 1865196 (E.D.N.Y. Apr. 24, 2019) ........................................... 9, 11

*CA-POWA ex rel. Rice v. Town of Greece, N.Y.*,
    No. 10-cv-6035, 2012 WL 912936 (W.D.N.Y. Mar. 16, 2012) ............................... 8

*Huebner v. Midland Credit Mgmt., Inc.*,
    897 F.3d 42 (2d Cir. 2018) ........................................................... 7

*In re Gen. Elec. Co. Sec. Litig.*,
    No. 09-cv-1951, 2012 WL 2892376 (S.D.N.Y. July 12, 2012) ........................... 4-5

*Lee v. Regal Cruises, Ltd.*,
    916 F. Supp. 300 (S.D.N.Y. 1996),
    *aff'd*, 116 F.3d 465 (2d Cir. 1997) ............................................... 5-6

*MacGregor v. Milost Global, Inc.*,
    No. 17-cv-06691, 2019 WL 2453340
    (S.D.N.Y. Apr. 19, 2019), *adopted*,
    2019 WL 2723522 (S.D.N.Y. July 1, 2019) ........................................... 6-7

**Page**

**Table of Authorities; Cases (*cont'd*)**

*McCabe v. Lifetime Entm't Servs.*,
   761 F. Appx. 38 (2d Cir. 2019) .................................................. 9, 10

*United States ex rel. Hayes v. Allstate Ins. Co.*,
   686 F. Appx. 23 (2d Cir. 2017) .................................................. 3-4

*Wik v. Kunego*,
   No. 11-cv-6205, 2014 WL 1746477
   (W.D.N.Y. Apr. 30, 2014) .................................................. 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>-against-<br><br>SPARK ENERGY, LLC,<br><br>*Defendant*. | 1:19-cv-04478-PKC-LB |

# INTRODUCTION

Plaintiff, Todd C. Bank ("Bank"), submits this memorandum of law in response to the opposition by Defendant, Spark Energy, LLC ("Spark"), to Bank's show-cause declaration and proposed amended complaint.

# ARGUMENT

# POINT I

**DEFENDANT FALSELY CLAIMS THAT PLAINTIFF ENGAGED IN CONTRADICTIONS; AND, DEFENDANT DOES SO IN ORDER TO PRETEND THAT THE PRESENT SCENARIO FITS INTO THE CASE LAW THAT HOLDS CONTRADICTIONS AS A FACTOR AGAINST GRANTING A MOTION FOR LEAVE TO AMEND A COMPLAINT**

**A.   Defendant Falsely Claims That Plaintiff Engaged in Contradictions**

Apparently relying upon the notion that a lie, if told enough times, becomes the truth, Spark repeatedly claims that Bank engaged in contradictions. These charges are so transparently false as to make it clear that Spark has engaged in the very bad faith of which it wrongly accuses Bank.

**First,** Spark states: "[Bank] admits that he . . . deliberately *pled. . . facts that **contradicted** one another*." Def. Mem. at 1 (emphasis added). However, there is nothing in the Complaint (Dkt. No. 1) that is contradictory, *i.e.*, nothing in it that renders false another part of it, nor anything either

1

in the proposed amended complaint or any representation that Bank made during the oral argument on Spark's dismissal motion that contradicts, *i.e.*, renders false, anything in the Complaint. It is therefore obvious that Spark fabricated its charges against Bank in order to fool the Court into finding that the present scenario fits into the case law that weighs contradictory allegations against a plaintiff's right to amend a complaint.

**Second,** Spark describes the Complaint as containing a "contradictory pleading that the calls did ***not*** identify Spark." Def. Mem. at 4 (emphasis by Spark). On the contrary, the Complaint alleges that "[t]he **Prerecorded Material** of the New York Telephone Calls . . . did not state the name of the person on whose behalf the New York," Compl., ¶ 37 (emphasis added), "did not state the *address* of the person on whose behalf the New York Telephone Calls were placed," *id.*, ¶ 38, (emphasis added) and "did not state the *telephone number* of the person on whose behalf the . . . [c]alls were placed." *Id.*, ¶ 39 (emphasis added). The Complaint also states that Spark made the telephone calls "for the purpose of encouraging the purchase or rental of energy-discount services provided by Spark." *See id.*, ¶¶ 29, 30, 31. Although the Court, in its Order dated September 24, 2020 (the "Order"; Dkt. No. 23), "[found that] this allegation, while perhaps a step closer to creating an inference that [Spark] placed or directed the call, is still not enough," Order at 8, it is obvious that the allegation that the *pre-recorded material* did not identify Spark does not contradict the allegation that Spark was responsible for the calls; that is, both of those allegations could be true. Indeed, the Order did not find, with respect to these allegations nor with respect to any other, that the Complaint was contradictory, either internally or with any of the representations that Bank made during the oral argument.

**Third,** Spark states:

> When addressing how his conclusory allegation that Spark was purportedly responsible for calls could be squared with his contradictory allegation that Spark was ***not*** identified in the calls,

2

> [Bank] stated: "Oh, very simple. Because, again, ***it wasn't alleged in the complaint***. But when I did get transferred to a live person, that's when I heard. That's when they advertised or promoted either way Spark's services. Again, I said it's not a gold [-]standard complaint." Oral Arg. Tr. (Dkt. 22) at 26:3-9 (emphasis added).

Def. Mem. at 5 (emphases by Spark). Again, there is no contradiction between the allegation that the pre-recorded material did not identify Spark and the allegation that Spark was responsible for the calls.

**Fourth,** Spark states, in "[r]egard [to] [Bank]'s decision not to allege that his residential number was on the national do-not-call registry," Def. Mem. at 7, that, "the more likely explanation for [Bank]'s behavior is that [Bank] intentionally left facts out, and pled deliberately contradicting facts, in order to either skate by on a complaint that would not expose his lack of standing or trigger a motion to dismiss, increase Spark's costs, and increase the nuisance value of his case." *Id.* at 8. This Court found that Bank had been required to allege, with respect to his "do-not-call" claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), that his telephone number had been registered on national do-not-call registry. *See* Order at 11 ("[w]hile a court may take judicial notice of public records integral, but not attached, to a complaint, the Court may not use such records to establish the truth of the matter asserted therein."). However, there is obviously nothing contradictory in alleging a violation but failing, as the Court found with respect to the Complaint, to allege a certain fact necessary to the assertion of the claim.

**B.    Defendant Pretends That the Present Scenario Fits into the
Case Law That Holds Contradictions as a Factor Against
the Granting of a Motion for Leave to Amend a Complaint**

Spark's reliance upon *United States ex rel. Hayes v. Allstate Ins. Co.*, 686 F. Appx. 23 (2d Cir. 2017), *see* Def. Mem. at 2, is misplaced. In *Hayes*, a *qui tam* action in which the plaintiff was an attorney, the court found that the plaintiff/attorney had falsely claimed to have personal knowledge of the allegations of the complaint, such that the district court had "ordered [him] to show

3

cause as to why he had not violated Federal Rule of Civil Procedure 11," *id.* at 26, ultimately finding that he "fit[] the definition of subjective bad faith," *id.* at 27 (citation and quotation marks omitted), and that he had "steadfastly adhered to his disproven allegations that he had personal knowledge . . . when [his] own submissions and statements before the court demonstrate that he does not possess such personal knowledge." *Id.* (citation and quotation marks omitted). The court concluded as follows:

> [The plaintiff/attorney] also argues that he should have been granted leave to amend his complaint. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend may be denied based on bad faith. The [district court] concluded [that the plaintiff/attorney] "should not now be allowed to simply walk away from his earlier misrepresentations," and the district court adopted this conclusion. And insofar as [he] concedes that some of the defendants may not be proper parties to the case, his proposed Second Amended Complaint does not solve that problem; in fact, the proposed Second Amended Complaint would *add* 38 new defendants. The district court's denial of leave to amend for bad faith based on the foregoing does not constitute an abuse of discretion.

*Id.* at 28 (emphasis in original; citations omitted).

Spark's reliance upon *In re Gen. Elec. Co. Sec. Litig.*, No. 09-cv-1951, 2012 WL 2892376 (S.D.N.Y. July 12, 2012), *see* Def. Mem. at 4, 6, is misplaced. There, the plaintiff had sought to assert allegations that he had previously, and repeatedly, disavowed:

> [The] [p]laintiff has not established good cause for filing an amended complaint. In its proposed amended complaint, the [p]laintiff seeks, for the first time, to assert claims under the Securities Act based on [the] defendants' knowledge and intent. But in all of its pleadings and motion papers filed since the initiation of this action more than three years ago (constituting two consolidated amended complaints, briefing on a motion to dismiss, and multiple briefs on a motion for reconsideration), the [p]laintiff explicitly disclaimed all allegations based on knowledge and intent pursuant to the Securities Act. This disclaimer allowed the [p]laintiff to avoid the heightened pleading requirements of Rule 9(b) Fed.R.Civ.P.
>
> Such actions reflect a lack of diligence on the part of the

4

> [p]laintiff, and do not establish good cause for leave to amend. Having made a tactical decision to pursue a particular legal theory and explicitly abandon certain claims. Plaintiffs will not be excused from the necessary consequences of this decision.

*Id.* at *3. The court further explained:

> [T]he [p]laintiff had ample notice of the deficiency . . . . [T]he defendants had already filed two briefs on [their dismissal] [m]otion. These briefs raised many of the arguments upon which the Court relied in the [dismissal] [o]pinion. Nevertheless, the [p]laintiff made no mention of its intention to file an amended complaint during the conference, and assented to the Court's plan to rule on [the] [p]laintiff's remaining claims "once and not twice." And when the Court authorized supplemental briefing and set a schedule in the . . . Scheduling Order [issued a month before the dismissal opinion], the [p]laintiff again remained silent on the issue of leave to amend.

*Id.* at *5.

Spark's reliance upon *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300 (S.D.N.Y. 1996), *aff'd*, 116 F.3d 465 (2d Cir. 1997), *see* Def. Mem. at 4, is misplaced. In *Lee*, in which the primary plaintiff alleged to have been injured by a fall on a cruise ship, the court denied the plaintiff's motion for leave to amend because it was untimely and because the facts that the plaintiff wished to allege in an amended complaint lacked veracity. With respect to untimeliness, the court stated: "[f]irst, [the] plaintiffs cannot explain the untimeliness of the motion—which comes ten months after the consensual court-ordered cutoff date . . . and more than two years after the accident—on the basis of lack of knowledge of the facts. Indeed, [the] plaintiffs have offered no explanation of why the plaintiffs did not rely on these alleged factors earlier." *Id.* at 303.

With respect to the substance of the proposed factual allegations, the court stated:

> The proposed amendment would add as alleged causative factors in the accident the allegedly rough sea conditions, the claim that the railing did not permit a proper grip, the allegedly worn condition of the carpeting, the metal stripping on the stair edges, and the rainy weather. By the very nature of these circumstances, [the plaintiff] must have known both of their existence and of their alleged contribution to the accident from the moment she fell. Indeed, the

5

> existence of each save the bannister rail point was mentioned in her deposition. Significantly, however, [the plaintiff] did not then suggest that any played a causative role.

*Id.* at 303. Accordingly, the court found:

> Second, the circumstances suggest that the request for leave to amend reflects an evolutionary development in plaintiffs' case that falls under the heading of bad faith. As [the plaintiff]'s November 1993 statement and her March 1995 deposition show, she then entertained no doubt as to the cause of the accident. She stepped on ice cubes which caused her to twist her ankle and fall on her left knee. Only when [the] defendants moved for summary judgment—and demonstrated that [the] plaintiffs were in serious danger of losing the case because [the] plaintiffs could not link the ice cubes to a breach of duty by the owners or their agents—did [the] plaintiffs first suggest that the weather, the handrail, the carpeting or the metal stripping played a role. This circumstance indicates that the failure to advance these other factors earlier was the product of bad faith—the factors were not regarded as causative, did not really exist, or some combination of both. . . . Moreover, certain of these now allegedly causative factors are subject to most serious question. [The] [p]laintiffs, for example, have not responded to [the] defendants' proof that the stairwell was an interior one that was not subject to the elements or to the photographs demonstrating the ease with which one could wrap one's hand around all three hundred sixty degrees of the handrail.

*Id.* at 304. Finally, the court found that the proposed amended complaint would not have stated a claim in any event: "[t]he[][ [timeliness and veracity] considerations alone would lead the Court to deny the []motion for leave to amend. . . . [H]owever, the Court concludes also that the proposed amendment would be futile, as the factors upon which [the] plaintiffs now would rely would be insufficient to salvage their case even if leave to amend were granted." *Id.*

Spark's reliance upon *MacGregor v. Milost Global, Inc.*, No. 17-cv-06691, 2019 WL 2453340 (S.D.N.Y. Apr. 19, 2019), *adopted*, 2019 WL 2723522 (S.D.N.Y. July 1, 2019), *see* Def. Mem. at 5, 10, is misplaced. In *MacGregor*, the court denied the plaintiff's motion for leave to amend because the court found that the plaintiff had sought to allege facts that contradicted the plaintiff's previously alleged facts: "[i]t is well established that a court may consider direct

6

contradictions between earlier pleadings and a proposed amended pleading in determining whether to grant leave to amend, particularly when the proposed amendments concern facts clearly within the plaintiff's knowledge when previous complaints were filed." *Id.* at *6. Specifically, the court explained:

> [T]he allegations in the [Second Amended Complaint] contradict facts that [the court] relied on in denying [the] [d]efendants' motion to dismiss the [Amended Complaint].... [The] [p]laintiff allege[d] he is a party to th[e] [contract] ... [and] has standing to assert a breach of contract claim based on the [contract] described in the [Amended Complaint]." Yet, [the] [p]laintiff now concedes that neither he nor [a co-defendant] were parties to any contracts with [the] [d]efendants.

*Id.* at *7 (citation omitted).

Spark's reliance upon *Wik v. Kunego*, No. 11-cv-6205, 2014 WL 1746477 (W.D.N.Y. Apr. 30, 2014), *see* Def. Mem. at 7, is misplaced. There, the court imposed sanctions for the filing of a motion for reconsideration that the court found to have been a frivolous because it "made no legal arguments warranted by existing law, and . . . provided no factual contentions" in support of the movant's position. *Id.* at *1.

Spark's reliance upon *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42 (2d Cir. 2018), *see* Def. Mem. at 10, 12, is misplaced. There, the district court had "sanctioned [the plaintiff] under [15 U.S.C.] § 1692k(a)(3) [of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o ("FDCPA")] and its inherent authority for . . . [the] reasons . . . that, as an attorney experienced in FDCPA litigation, [the plaintiff] played a substantial role in crafting his case's litigation strategy," *id.* at 57, explaining: "[the plaintiff] has not denied, for example, that at one point he fed his attorney all the questions he asked at a deposition. [The plaintiff] also suggested in his opposition to sanctions that he had called [an employee of the defendant] to "test" [the defendant]'s FDCPA compliance. The district court interpreted this as an admission that [the plaintiff] had been purposefully evasive during the call in an effort to provoke an FDCPA violation." *Id.*

7

Spark's reliance upon *CA-POWA ex rel. Rice v. Town of Greece, N.Y.*, No. 10-cv-6035, 2012 WL 912936 (W.D.N.Y. Mar. 16, 2012), *see* Def. Mem. at 3, 4, 6, 12, is misplaced. There, "[t]he Court asked counsel three different times why he waited until an hour before oral argument to file an amended complaint, and received different answers," *id.* at *2, none of which, according to the court, "contain[ed] the ring of truth." *Id.* at *3. Spark's reliance upon *CA-POWA* to support Spark's claims that Bank "[i]ntentionally violat[ed] binding law," Def. Mem. at 3, namely, "the Federal Rules of Civil Procedure," *id.*, and that "*CA-POWA* is closely analogous to the present case," *id.* at 4, are, of course, purely sophistic. Furthermore, Spark claims that "*CA-POWA* is closely analogous to the present case, as [Bank] obviously knew the rules [and] had violated them in the past (and had cases dismissed for violating them)," *id.*, but does not cite any such cases, nor any case, whether or not involving Bank, in which a court has described the failure to state a claim as a "violation" of "the rules," or as "flatly contrary to law," *id.* at 6, much less that such a "violation" should be held against a party and/or attorney in a different case.

## POINT II

### DEFENDANT TRANSPARENTLY ATTEMPTS TO BIAS THIS COURT

Spark's attempts to sway this Court not only based upon other cases in which Bank was involved, but by such cases even though they did not concern any of the issues presented in the instant case, are so obvious an affront to the integrity of this Court that it would be a disservice of the Court not to, at minimum, warn Spark's counsel against such conduct; indeed, comparable attempts to prejudice a jury would not be tolerated.

**First,** Spark states: "[Bank]'s inappropriate conduct has been noticed in other cases and continues in the present case." Def. Mem. at 1, n.1. Spark follows that charge not by addressing anything that occurred in the present case, but only by references to unrelated cases involving Bank.

**Second,** Spark refers to "[Bank]'s disrespectful comments to Judge Denny Chin [during an

8

oral argument in the Second Circuit], leading to [Bank] being removed from the courtroom." *Id.* As to how that incident bears on, much less supports, Spark's charge that Bank engaged in contradictory pleadings and representations here, Spark does not, of course explain (as the parties' memoranda of law are public records, Bank refers the curious reader to Bank's letter regarding the Second Circuit incident. *See Doyle v. Palmer*, 2d Cir. No. 19-939, Doc. 54 (Dec.16, 2019)).

**Third,** Spark cites *Bank v. CreditGuard of America, Inc.*, No. 18-cv-1311, 2020 WL 1516107 (E.D.N.Y. Mar. 30, 2020), for having stated: "'Plaintiff Todd Bank is a frequent litigant, and is often sanctioned.'" Def. Mem. at 2, n.1, quoting *CreditGuard*, 2020 WL 1516107 at *4. The *CreditGuard* court then cited, in support of the "often sanctioned" comment, *McCabe v. Lifetime Entm't Servs.*, 761 F. Appx. 38, 42 (2d Cir. 2019), which, the court stated, "collect[s] cases where "[Todd Bank's] arguments have been consistently rejected by this Court and by other circuits." *CreditGuard*, 2020 WL 1516107 at *4. Spark also cites *McCabe*. *See* Def. Mem. at 2, n.1. In *McCabe*, in which Bank was sanctioned, the court did not cite any other instance of Bank's having been sanctioned; and, although the *McCabe* sanctions are not the only instance of Bank's having been sanctioned, no fair-minded person would even suggest that Bank has been "often sanctioned." In addition, *McCabe* referred to one Second Circuit decision that had rejected the position that Bank had advanced in *McCabe*, and also cited rulings by other Circuits that, according to *McCabe*, had also rejected that position (Bank had apparently failed to sufficiently explain, in *McCabe*, that Bank (that is, on behalf of his client) had relied upon the axiomatic right to preserve, for further appellate review, substantively non-frivolous arguments that are currently foreclosed by binding precedent (which, with respect to the question at issue in *McCabe*, had been, and continue to be, accepted by several courts). Finally, Spark's contention that, with respect to the instant case, Bank had engaged in "similar behavior in *McCabe*," Def. Mem. at 6, is so blatantly false as to remove any possible

9

remaining doubt that Spark invokes *McCabe* solely to bias this Court.

**Fourth,** Spark states: "[a]s the Court noted at oral argument, at issue is [Bank]'s pleading failures, not his informal attempts to obtain money from Spark before filing a complaint. Oral Arg. Tr. (Dkt. 22) at 19:4-15." Def. Mem. at 11. Given that the Court did not even address anything concerning "attempts to obtain money from Spark before filing a complaint," Spark's deceptive portrayal of the oral argument is yet again an obvious attempt to bias the Court.

**Fifth,** Spark states: "[Bank] argues that 'the standard that applies to an attorney . . . has nothing to do with the level of that attorney's experience.' Dkt. 24 at 5. As with almost every other portion of his show-cause response, this statement is backed by no authority whatsoever. And it is wrong." Def. Mem. at 12. However, Spark omits the context of Bank's argument, and, of course, omits the fact that the Court agreed with it. *See* Declaration of Todd C. Bank ("Bank Decl."; Dkt. No. 24), ¶ 11.

**Sixth,** Spark states: "[Bank] . . . carved out two of four alleged calls from his complaint without amending (which he once had the right to do) or moving to amend." Def. Mem. at 12, citing Transcript of Oral Argument held on December 3, 2019 ("Tr."; Dkt. No. 22), at 29:13-30:1. However, Spark chooses to refer to only part of the relevant discussion instead of all of it. *See* Tr. at 29:13 - 32:25. Notably, Spark never sought, either formally or informally, the dismissal of the allegations concerning the two calls.

## POINT III

### DEFENDANT DOES NOT EVEN PRETEND TO SHOW EVIDENCE OF THE MOTIVES THAT IT ASCRIBES TO PLAINTIFF

**First,** Spark states: "[t]he only rational explanations for why [Bank] continues to intentionally violate the Rules are that he is acting in bad faith to harass or obtain tactical advantage: he wants to . . . increase the briefing and costs for defendants or proceed on an improper complaint

10

and causes of action that lack merit, knowing that until a court catches on he will always get a pleadings redo." Def. Mem. at 7. Although Bank has, either herein and/or in his declaration, addressed the elided portion, Spark does not, with respect to the quoted portion, cite a single instance of Bank's having been permitted leave to replead upon the dismissal of a complaint (to be sure, such instances exist, as do dismissals without leave to replead, but it is notable that Spark does not even purport to support its pretension to reading Bank's mind).

    **Second,** Spark states:

> [Bank] knew that certain judges in the Eastern District of New York, including the Honorable Judge Chen, held this view, because [Bank] was involved in *Bank v. CreditGuard of Am.*, No. 18-CV-1311(PKC), 2019 WL 1316966, at *1, 13 (E.D.N.Y. Mar. 22, 2019), *reconsideration denied*, 2019 WL 1865196 (E.D.N.Y. Apr. 24, 2019). Despite this knowledge, [Bank] sought to thread the needle by pleading so vaguely, and leaving out so many facts that, if faced with a motion to dismiss, he could find out which judge he drew before deciding the extent to which he would attempt to clean up this claim in an amended complaint.

Def. Mem. at 8-9. First, the fact that one judge of this District ruled one way with respect to the issue in question, *i.e.*, of Article III standing for a claim under New York General Business Law ("GBL) Section 399-p, whereas another judge ruled a different way, did not obligate Bank to assume that the instant case would be assigned to the former judge (or a judge who shared that judge's view) and tailor his Complaint accordingly. Indeed, Bank had the right, as reflected in the Complaint, to simply *agree* with the latter judge.

    Third, even assuming, *arguendo*, that it would have been improper of Bank to have waited to "find out which judge he drew before deciding the extent to which he would attempt to clean up this claim in an amended complaint," the only evidence regarding whether Bank did so here is to the contrary, as Bank has not moved to amend the Complaint (which Spark acknowledges, *see* Def. Mem. at 12 ("[Bank] . . . has failed even to file a motion for leave to amend.")), but, instead,

submitted a proposed amended complaint in accordance with the Order. Indeed, Bank argued, albeit unsuccessfully, that he had sufficiently pleaded his GBL claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Dismissal of the Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 19) at 8-9. In short, Bank believed, and continues to believe, that he sufficiently pleaded his GBL claim; therefore, Spark's accusation that "[Bank] sought a tactical advantage by pleading *inadequately*," Def. Mem. at 9 (emphasis added), is based on the false premise that Bank believed that he had not adequately pleaded his claim.

**Third,** Spark states: "[Bank] states 'I believe that the Order wrongly accuses me of having written the Complaint in bad faith.' Plaintiff's Show-Cause Response (Dkt. 24) at 2. Either he wrote the complaint in bad faith or he did not. It is not convincing for him now to state that he 'believes' he did not." Def. Mem. at 10. Spark is correct: Bank should have made his intended meaning, *i.e.*, that he did not act in bad faith, perfectly clear, which Bank did elsewhere, as Spark itself shows. *See* Def. Mem. at 12 (the Court "'wrongly assumes that I had acted in bad faith in writing the Complaint,'" quoting Bank Decl., ¶ 11).

**Fourth,** Spark similarly states: "[Bank] admitted he 'deliberately' pled below the standard." Def. Mem. at 12. Again, Spark knows that this is false, as Spark itself elsewhere quotes Bank as follows: "'I ***deliberately*** [(emphasis by Spark)] made the complaint the way I did it because on principle *I thought it was sufficient*.'" Def. Mem. at 6, quoting Tr. at 7:11-13 (emphasis added).

**Fifth,** Spark states: "[a]nd perhaps most importantly, [Bank] . . . baldly admits that he could not be bothered with pleading properly: 'I purposely made it a barebones complaint with the hope of avoiding my having to do another 25 page brief[.]'" Def. Mem. at 12, quoting Tr. at 17:8-11. Spark could hardly have taken Bank's quotation further out of context. *See* Bank Decl., ¶ 5.

12

## POINT IV

### THE PROPOSED AMENDED COMPLAINT STATES A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW SECTION 399-p

Because Spark rests on arguments that it previously made with respect to Bank's GBL claim, *see* Def. Mem. at 13-14, Bank, having already addressed those arguments, rests on his previously asserted arguments. However, Spark's contention that "[Bank]'s attempt in his show-cause response to argue further with the Court is nothing more than a defective motion for reconsideration in a so-called 'declaration,'" *id.* at 14, is nonsensical, as Bank was directed to explain why he should be permitted to amend the Complaint, thus necessitating a discussion of the sufficiency of Bank's proposed amended complaint.

## CONCLUSION

Plaintiff respectfully requests that this Court: (i) amend the Order dated September 24, 2020 (the "Order"; Dkt. No. 23), by permitting Plaintiff leave to amend the Complaint; and (ii) grant, to Plaintiff, any lawful and proper relief.

Dated: October 19, 2020

        Respectfully submitted,

          s/ *Todd C. Bank*
        TODD C. BANK,
         ATTORNEY AT LAW, P.C.
        119-40 Union Turnpike
        Fourth Floor
        Kew Gardens, New York 11415
        (718) 520-7125
        By Todd C. Bank

        *Counsel to Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that true and accurate copies of this document is being filed electronically on October 19, 2020, via the Court's electronic-case-filing (ECF) system. Notice of this filing will be sent by the Court's ECF system to all parties, and copies will be mailed to those parties, if any, that are not served in such manner.

Dated: October 19, 2020

                                                                                  **s/** ***Todd C. Bank***
                                                                                    Todd C. Bank